JS-6
O

# United States District Court
# Central District of California

| | |
|---|---|
| MECHANIX WEAR, INC., a California corporation; ZACHARY JERGAN, an individual,<br><br>                Plaintiffs,<br><br>    v.<br><br>PERFORMANCE FABRICS, INC., a Michigan corporation, doing business as HEXARMOR; and DOES 1–50,<br><br>                Defendants. | Case № 2:16-cv-09152-ODW (SS)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND [19] AND GRANTING DEFENDANT'S MOTION TO DISMISS FOR FORUM NON CONVENIENS [15, 22]** |

## I. INTRODUCTION

This declaratory judgment action was filed to determine whether the non-compete agreement that Plaintiff Zachary Jergan signed while working for Defendant Performance Fabric Inc. bars him from working for Plaintiff Mechanix Wear Inc. in Los Angeles County.  Before the Court is Plaintiffs' motion to remand (ECF No. 19) and Defendant's motion to dismiss for forum non conveniens.  (ECF Nos. 15, 22.)  The Court **DENIES** Plaintiffs' motion to remand and **GRANTS** Defendant's motion to dismiss on forum non conveniens grounds.

## II. FACTUAL BACKGROUND

### A. The California Action

Mechanix and Defendant are both manufacturers of advanced personal protective equipment (gloves, clothing, and other items used in industrial settings). (Mot. to Dismiss 1, ECF No. 16.) Mechanix is a California corporation headquartered in Los Angeles County, California, and Defendant is a Michigan corporation headquartered in Grand Rapids, Michigan. (Not. of Removal ¶¶ 6–7, ECF No. 1.) Jergan is a current employee of Mechanix and former employee of Defendant. (Jergan Decl. ¶¶ 5, 24, ECF No. 18-1.)

Jergan was a twenty-two year old senior at Wooster College when he received an offer to be Defendant's Regional Sales Manager for Central and Eastern Europe.[1] (*Id.* ¶ 5.) He initially worked out of Defendant's Grand Rapids, Michigan headquarters from November 2014 to May 2015. (*Id.* ¶ 10.) He then moved to Croatia where he lived from May 2015 to September 2015, before moving back to his parents' Wexfield, Pennsylvania home in October 2015. (*Id.*)

In August 2015, Defendant presented Jergan with a "mandatory" "Non-disclosure, Non-Competition, Non-Solicitation Agreement." (*Id.* ¶¶ 13, 15.) This agreement contains a forum selection clause that requires all related legal actions to be filed in Kent County Circuit Court.[2] (Non-compete Agreement 39, ECF No. 16-2.) The agreement also allows Defendant to recover attorneys' fees in the event that Jergan files a lawsuit in a venue other than Kent County Circuit Court and Defendant incurs costs "seeking to change venue." (*Id.*) Lastly, the agreement specifies that all related disputes will be governed by Michigan law. (*Id.*)

---

[1] Jergan graduated college around the same time that he began his employment with Defendant. (Jergan Decl. ¶¶ 4–5.)

[2] Kent County is located in Michigan and includes the city of Grand Rapids where Defendant is headquartered.

Jergan signed the agreement on August 24, 2015. (Jergan Decl. ¶ 13.) He claims that he did not fully understand the agreement or the significance of its forum selection clause at that time. (Jergan Suppl. Decl. ¶¶ 3, 5, ECF No. 18-4.) Nevertheless, he did not seek an attorney's advice before signing the agreement.[3] (Jergan Decl. ¶ 15.)

In October 2016, Jergan interviewed for Mechanix's European Union Territory Sales Manager position. (*Id.* ¶ 17.) On November 4, 2016, Jergan was offered the position provided that he relocate to California by November 27, 2016. (*Id.* ¶ 18.) Jergan notified Mechanix of the non-compete agreement he signed with Defendant in the week after receiving his offer of employment. (*Id.* ¶ 19.)

On November 14, 2016, Jergan ended his employment with Defendant and informed his manager that he would be working for Mechanix. (*Id.* ¶ 20.) Two days later, Defendant's Michigan counsel informed Jergan that Defendant intended to enforce the non-compete agreement. (*Id.* ¶ 22.) On that same day, Plaintiffs filed this declaratory judgment action in the California Superior Court, County of Los Angeles. (ECF No. 1-1.) In their complaint, Plaintiffs asked the court to declare: (1) that California law applies to the non-compete agreement; (2) that the non-compete agreement is invalid and unenforceable under California Business and Professions Code section 16600; (3) that Defendant is engaging in unfair business practices pursuant to California Business and Professions Code section 17200; and (4) that any out of state judgment obtained against Jergan be deemed unenforceable in California. (Compl. at 7, ECF No. 1-1.) Defendant removed this case to federal court on December 9, 2016. (ECF No. 1.) On December 16, 2016, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, which the Court subsequently converted into a motion for forum non conveniens.[4]

---

[3] Although Jergan signed the agreement on August 24, 2015, while still working in Europe, he did not deliver the agreement to Defendant until their next sales meeting, presumably after he returned to the United States. (Jergan Decl. ¶ 14.)

[4] The Court converted the motion to one for forum non conveniens on January 10, 2017, and in the interest of fairness, gave the parties an opportunity to submit additional briefing specific to forum non conveniens. (ECF Nos. 22, 26–27); *see also Glob. Quality Foods, Inc. v. Van Hoekelen*

1  Jergan traveled to California on November 27, 2016, and began working for
2  Mechanix the following day. (Jergan Decl. ¶ 24.) He has a California driver's license
3  and presently resides in Toluca Lake, California. (*Id.* ¶ 26.)

   On January 9, 2016, Plaintiffs filed a motion to remand. (ECF No. 19.) In their
   motion, Plaintiffs assert that Defendant has not established the amount in controversy
   requirement for diversity jurisdiction. (Mot. to Remand 7–8, ECF No. 20.) Both the
   motion to remand and the motion to dismiss for forum non conveniens are fully
   briefed and ready for decision.[5]

## B. The Michigan Action

Meanwhile, Defendant filed its own action in Kent County Circuit Court on November 23, 2016, seeking to enforce the non-compete agreement against Jergan. (Not. of Related Cases 1, ECF No. 4.) On December 6, 2016, Jergan removed the case to federal court in the Western District of Michigan. (*Id.*) On January 11, 2017, that court entered a preliminary injunction against Jergan preventing him from working for Mechanix. (Valles Decl. ¶ 19, ECF No. 31.)

### III. LEGAL STANDARD

## A. Motion to Remand

Federal courts have subject matter jurisdiction only as authorized by the Constitution and by Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

---

*Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL 4259126, at *4 (N.D. Cal. Aug. 12, 2016) (converting a Rule 12(b)(3) motion into a motion to dismiss for forum non conveniens after offering the parties an opportunity to make arguments specific to forum non conveniens).

[5] The Court has reviewed the parties' submissions and deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). The removal statute is strictly construed against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

### B.     Motion to Dismiss for Forum Non Conveniens

Venue is proper under 28 U.S.C. § 1391(b) in: (1) a judicial district in which any defendant resides; (2) a judicial district in which a substantial part of the events giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Where venue is proper under 28 U.S.C. § 1391(b), a defendant may nonetheless move to dismiss the case if a valid forum selection clause points to a state court. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013). In such circumstances, the proper motion is one for forum non conveniens. *Id.* at 580 ("the appropriate way to enforce a forum-selection clause pointing to a state . . . forum is through the doctrine of *forum non conveniens*").

In evaluating a motion for forum non conveniens, the Court must first determine whether the relevant forum selection clause is valid under federal law. *See Meyer v. Howmedica Osteonics Corp.*, No. 14CV2496 AJB NLS, 2015 WL 728631, at *8 (S.D. Cal. Feb. 19, 2015) (citing *Doe 1 v. AOL LCC,* 552 F.3d 1077, 1083 (9th Cir. 2009)); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1353 (9th Cir. 1990). Forum selection clauses are "prima facie valid and should be enforced" absent a "strong showing" by the opposing party that the clause is "unreasonable." *Meyer,* 2015 WL 728631, at *8 (quoting *M/S Bremen v. Zapta Off–Shore Co.,* 407 U.S. 1, 10 (1971)).

There are three reasons why such a clause may be deemed unreasonable: (1) if inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought. *See id.* (citing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998)).

If a court finds the forum selection clause valid under federal law, the next step in the forum non conveniens analysis is to assess whether the public interest factors weigh against dismissal. *Atl. Marine*, 134 S. Ct. at 582 (holding that where a valid forum selection clause controls, the private interest factors "weigh entirely in favor of the preselected forum").[6]  "These factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *O'keeffe's Inc. v. Access Info. Techs. Inc.*, No. 15-CV-03115-EMC, 2015 WL 6089418, at *2 (N.D. Cal. Oct. 16, 2015) (quoting *Atl. Marine*, 134 S. Ct. at 581 n.6).  However, the public interest factors will "rarely" function to defeat a motion, and "[thus] the practical effect is that forum selection clauses should control except in unusual cases." *Id.* (quoting *Atl. Marine*, 134 S. Ct. at 582).

## IV. DISCUSSION

### A. Motion to Remand

Defendant removed this case on the basis of diversity jurisdiction.  The parties do not dispute that complete diversity of citizenship exists; the sole issue is whether

---

[6] Although the Supreme Court examined a motion to transfer pursuant to 28 U.S.C. § 1404(a) in *Atlantic Marine*, it indicated that the analyses for a motion to transfer and a motion to dismiss for forum non conveniens are the same: "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." 134 S. Ct. at 580; *see also Glob. Quality Foods*, 2016 WL 4259126, at *9 (examining a forum selection clause that pointed to Ohio state court).

the amount in controversy exceeds $75,000. (Mot. to Remand 7–8.) Plaintiffs seek only declaratory relief. (Compl. at 7.) Where declaratory relief claims form the basis of a case, courts determine the amount in controversy by examining the "value of the object of the litigation." *Meyer*, 2015 WL 728631, at *4 (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). Where the object of the litigation is a non-compete clause, the amount in controversy requirement may be established either by showing that the employee's yearly salary exceeds $75,000 at his new employer or by showing that the employee produced more than $75,000 in profit for his previous employer "during the period immediately preceding termination." *Id.* (citing *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008), *Prutsman v. Rust Consulting, Inc.*, No. C12 6448 PJH, 2013 WL 1222707, at *1 (N.D. Cal. Mar. 25, 2013), and *Rao v. Tyson Foods, Inc.*, No. 1:09 CV 303 AWI SMS, 2009 WL 1657458, at *1 (E.D. Cal. June 12, 2009)).

Here, there is clear evidence of Jergan's salary at Mechanix, his new employer. Jergan's offer letter indicates that when he started working for Mechanix his base salary was $100,000. (Def. Opp'n, Ex. 10, ECF No. 29.) He also receives bonuses on top of that salary. (*Id.*) Therefore, Jergan satisfies the amount in controversy requirement because his salary exceeds $75,000 at his new employer. *Meyer*, 2015 WL 728631, at *4.

Jergan also satisfies the amount in controversy requirement on the basis of producing profits in excess of $75,000 for his previous employer "during the period immediately preceding termination." *Id.* In applying the previous employer test, courts have examined the amount of revenue an individual generates "during the period immediately preceding termination" and then determined whether that level of revenue would result in profits exceeding $75,000. *Meyer*, 2015 WL 728631, at *4; *Mahoney v. Depuy Orthopaedics, Inc.*, No. CIVF 07-1321 AWI SMS, 2007 WL 3341389, at *5 (E.D. Cal. Nov. 8, 2007) (indicating that "[c]ourts have . . . examined the revenues generated by an employee" and citing examples). In Jergan's

supplemental declaration, he indicates that "[b]efore [he] resigned from [his position with Defendant] on November 14, 2016, [he] had closed approximately $660,000 in sales for the year." (Jergan Suppl. Decl. ¶ 9.)  Jergan also indicates that "[he] generated" $661,000 of 2015 revenue for Defendant. (*Id.* ¶ 8.)  Taking into account the revenue Jergan generated between January 1, 2016, and November 14, 2016 ($660,000), and one and a half months' worth of his 2015 revenue ($82,625, the average 2015 month multiplied by 1.5), Jergan was responsible for $742,625 in revenue "during the period immediately preceding" his transition to Mechanix.[7]

One court in the Southern District of California recently found that $650,000 in revenue was sufficient to produce profit exceeding $75,000. *Meyer*, 2015 WL 728631, at *7.  In so finding, the court noted specifically that "inferring a $75,000 profit from $650,000 in revenue requires only a slim profit margin and is entirely reasonable." *Id.* at *4.

Plaintiffs contend that Jergan's profits should be calculated differently, arguing that because Jergan's region was producing $540,000 per year in revenue before he was hired for the position and he increased that figure to $660,000 the following year, only $120,000 of revenue is attributable to him. (Mot. to Remand 8.)  This argument lacks common sense and is out of step with relevant case law.  Plaintiffs essentially ask the Court, without citing any cases that apply their approach, to believe that the first $540,000 of products essentially sold themselves.  The Court finds that the more prudent approach, and the approach adopted by other district courts in the Ninth Circuit, is to examine the total revenues derived from a party's labor, not merely the party's value added. *See Meyer*, 2015 WL 728631, at *7; *Mahoney*, 2007 WL 3341389, at *5.

---

[7] The Court interprets the phrase "period immediately preceding termination" to mean the year immediately preceding termination. *See Luna*, 575 F. Supp. 2d at 1175 (discussing the plaintiff's sales and profits in the "year prior to his resignation"); *Mahoney*, 2007 WL 3341389, at *5 (referencing profits on a yearly basis).

Jergan also submits a third supplemental declaration alleging that "some" of the revenue in the $660,000 figure was not actually generated by him. (Jergan Third Suppl. Decl. ¶ 3, ECF No. 20-7.) Specifically, he alleges that some of this revenue resulted from customers in his region making independent purchases from Defendant without his involvement. (*Id.*) This may well be. However, even if $122,625 in revenue (roughly seventeen percent of the total) were attributable to such transactions, this case would still involve the generation of $650,000 in revenue, which *Meyer* found sufficient to produce profits exceeding $75,000.[8]

The Court finds that the evidence of record sufficiently establishes at this early stage of the litigation that Jergan generated revenues in excess of $650,000 during the period immediately preceding his transition to Mechanix. (Jergan Suppl. Decl. ¶¶ 8–9.) Based on this revenue figure, the Court finds that it is reasonable to assume that Defendant produced profits in excess of $75,000 during the same period. Thus, Defendant meets both of the amount in controversy tests applied in non-compete clause cases. *Meyer*, 2015 WL 728631, at *4. Plaintiffs' motion to remand is therefore **DENIED**.

**B.     Forum Non Conveniens**

   **1. Whether Venue is Proper under 28 U.S.C. § 1391(b)**

Defendant is not a resident of California. (Not. of Removal ¶ 6.) As such, the Court must consider whether a substantial part of the events giving rise to the claims occurred in this district. 28 U.S.C. § 1391(b)(2). The Court finds that venue is proper on that basis. This declaratory relief action centers on Jergan's ability to work for Mechanix, a California corporation headquartered in Los Angeles County. (Not. of Removal ¶ 7.) When Jergan filed this claim, he had already taken affirmative steps to effectuate employment in Los Angeles County: he had interviewed for a position at

---

[8] In *Meyer*, the Court acknowledged that there were others working with the plaintiff who contributed to the $650,000 figure. 2015 WL 728631, at *4. The plaintiff was merely "the *primary* Trauma Representative responsible for servicing customers that generated annual revenues in excess of $650,000." *Id.* (emphasis added).

Mechanix and received an offer of employment contingent on his moving to California by November 27, 2016. (Jergan Decl. ¶¶ 17–18.) Further, both parties knew at the time this declaratory relief action was filed that breach of the non-compete agreement would imminently occur when Jergan began working for Mechanix in Los Angeles County. (Jergan Decl. ¶¶ 20–22.) Taking these facts as a whole, the Court finds venue proper pursuant to 28 U.S.C. § 1391(b).

### 2. Whether the Forum Selection Clause is Valid Under Federal Law

#### a. *Fraud or Overreaching*

Plaintiffs argue that the non-compete agreement containing the forum selection clause resulted from Defendant's overreaching. (Pls. Opp'n 10–12, ECF No. 18.) Overreaching is generally seen as "a ground short of fraud." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004). In evaluating whether an agreement was the product of overreaching, courts have taken into account factors such as the signer's level of education, power differentials between the parties, and circumstances underlying the agreement's signing. *Id.* Courts have also stressed the importance of taking into account how the clause is communicated. *See, e.g.*, *Robles v. Comtrak Logistics, Inc.*, No. 2:13-CV-00161-JAM-AC, 2015 WL 1530510, at *5 (E.D. Cal. Apr. 3, 2015) (a forum selection clause is "enforceable if there is reasonable communication of the clause.") (citing *Marcotte v. Micros Sys., Inc.*, No. C 14–01372 LB, 2014 WL 4477349, at *7 (N.D. Cal. 2014))

As Defendant points out in its reply, Plaintiffs' arguments are totally off-base. (Def. Reply 2–5, ECF No. 21.) To begin, Plaintiffs mistakenly read overreaching to mean that the non-compete agreement itself was overbroad, *not* that the agreement was obtained through Defendant's overreaching. (Pls. Opp'n 10–12.) As described in the previous paragraph, overreaching is a lesser form of fraud, and involves an analysis of the parties' conduct, characteristics, respective bargaining positions, and of how the forum selection clause was communicated in the contract—not a substantive analysis of the underlying contract. Plaintiffs' argument that forum selection clauses,

in general, are not valid under Michigan law is equally misguided. (*Id.* at 11.) Case law instructs the Court to examine whether the relevant forum selection clause is valid under *federal law*, not Michigan law. *Meyer*, 2015 WL 728631, at *8 (citing *Doe 1*, 552 F.3d at 1083); *Kiland v. Boston Sci. Corp.*, No. C10–4105 SBA, 2011 WL 1261130, at *4 (N.D. Cal. Mar. 31, 2011) ("a district court, sitting in diversity, must interpret forum-selection clauses under federal common law, without regard to any choice-of-law provisions in the subject agreement.").[9]

After conducting a thorough review of the record, the Court concludes that there is insufficient evidence to support a fraud or overreaching claim. At the time Jergan signed the agreement containing the forum selection clause, he was twenty-three years old and had graduated from college. (Jergan Decl. ¶ 5; Jergan Suppl. Decl. ¶ 4.) He had also accrued nine months of business experience working for Defendant before signing the agreement. (Jergan Decl. ¶¶ 5, 13.)

Further, while it may have been "mandatory" that Jergan sign the agreement to continue working for Defendant, there is no evidence that he was pressured into doing so. (Jergan Decl. ¶ 15.) Jergan could simply have opted to find a new job, as he did a year later. Likewise, although Jergan mentions that he did not consult an attorney before signing the agreement, there is no evidence that he was prevented from doing so or that there was insufficient time for him to do so. (*Id.*) Finally, the forum selection clause was clearly communicated in the non-compete agreement. The clause appears beneath the bold underlined heading "Governing Law/Forum" in the middle of a brief four-page typewritten agreement. (Non-compete Agreement 39.) Based on these facts, the Court concludes that there was no fraud or overreaching that would make enforcement of the forum selection clause unreasonable.

---

[9] In *679637 Ontario Ltd. v. Alpine Sign & Printer Supply, Inc.*, No. 16-12866, 2016 WL 6804489, at *3 (E.D. Mich. Nov. 17, 2016) another district court addressed the *exact* argument Plaintiffs make here about Michigan's prohibition on venue selection causes and reached the same conclusion: that federal common law, not state law, applies in determining the validity of a forum selection clause in federal court.

### b. *Whether Plaintiffs Would Be Deprived of Their Day in Court*

The second unreasonableness test focuses on whether the parties possess the financial and physical ability to defend themselves in the forum clause state. *Meyer*, 2015 WL 728631, at *10 (citing *Murphy*, 362 F.3d at 1141–1142). Plaintiffs have not put forth any evidence of overwhelming financial hardship or physical impairment that would prevent them from bringing their claims in Michigan. *Cf. Murphy*, 362 F.3d at 1141–1142 (finding that a district court erred when it concluded that the plaintiff would not be deprived of his day in court, where the plaintiff's sole income was derived from disability benefits and he had a back injury that made travel difficult).

Plaintiffs argue that because Michigan courts may not entertain their California state law claims, the forum selection clause would function to deprive them of their day in court. (Pls. Opp'n 13–16.) To begin, this argument misconstrues the nature of the second test which focuses on whether financial hardship and physical impairment would effectively prevent a party from litigating in the forum clause state (see previous paragraph). *See, e.g., Meyer*, 2015 WL 728631, at *10 (considering financial and physical hardship); *Clause v. Sedgwick Claims Mgmt. Servs., Inc.*, No. CIV 15-388-TUC-CKJ, 2016 WL 213008, at *3 (D. Ariz. Jan. 19, 2016) (financial and physical hardship); *Monastiero v. appMobi, Inc.*, 15 F. Supp. 3d 956, 961 (N.D. Cal. 2014) (financial hardship).

Further, the Supreme Court has made it clear that a plaintiff who files suit in a venue other than that prescribed by a forum selection clause should not be entitled to "state-law advantages" "concomitant" with that decision. *Atl. Marine*, 134 S. Ct. 568 at 583. Here, Plaintiffs apparently hoped that by filing in California, rather than in Michigan as prescribed by the forum selection clause in Jergan's contract, that they would be able to take advantage of California state law to invalidate the non-compete agreement. This is exactly the type of behavior that the Supreme Court sought to

discourage in *Atlantic Marine*. *Id.* The Court does not find the forum selection clause unreasonable under the second test.

### c. *Whether the Clause Violates California's Public Policy*

Plaintiffs argue that California has a strong public policy against forum selection clauses of the sort in Jergan's contract. In support of their argument, Plaintiffs cite *General Acceptance Corp. v. Robinson*, 207 Cal. 285 (1929) which prohibits venue selection clauses that disrupt California's statutory venue scheme, as contrary to public policy. (Pls. Opp'n 23.) Plaintiffs also cite to California's statutory scheme which provides for venue in the county (1) where a contract is to be performed, the county (2) where the obligation or breach of contract arises, and the county (3) where a corporation's principle place of business is situated. (Pls. Opp'n 22–23); *see also* Cal. Civ. Code § 395.5.

More than eighty years after the California Supreme Court decided *General Acceptance*, the California Court of Appeals clarified that it does not stand for the proposition that all venue selection clauses are invalid under California law. *Battaglia Enterprises, Inc. v. Superior Court of San Diego Cty.*, 215 Cal. App. 4th 309, 317–318 (2013). Venue selection clauses remain valid to the extent they limit venue to one of the three counties enumerated in California Civil Code section 395.5. *Id.* at 318. Here, Jergan is subject to a clause that limits venue to a particular court in Kent County. Defendant's principal place of business is located in Kent County. Therefore, the clause in Jergan's contract would not be contrary to California's statutory venue scheme, and by extension, its public policy.

Plaintiffs next argue Labor Code section 925 evidences California's strong public policy against forum selection clauses that require its citizens to litigate disputes outside of the state. However, this statute's applicability is limited to employees who "agree to" contracts containing such forum selection clauses while "primarily residing and working in California." Cal. Lab. Code § 925. When Jergan and Defendant agreed to the non-compete agreement containing the forum selection

clause, Jergan was not "primarily residing and working in California." *Id.*; (Jergan Decl. ¶ 13.) Indeed, Jergan *never* worked for Defendant in California. Thus, this argument fails.

Finally, Plaintiffs argue that the forum selection clause is unreasonable because it arises in a non-compete agreement, and California has a strong public policy against non-compete agreements. This argument fails because the only relevant consideration is whether the forum clause selection clause itself violates California's public policy, not the agreement in which it appears. *Run Them Sweet, LLC v. CPA Glob. Ltd.*, No. 16-CV-03662-JST, 2016 WL 6216874, at *3 (N.D. Cal. Oct. 25, 2016) (finding that public policy argument must relate "to venue"); *E. Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA, 2014 WL 1618382, at *3 (N.D. Cal. Apr. 21, 2014) (same). This Court and others have repeatedly and definitely foreclosed the exact argument Plaintiffs make here: that California's public policy against non-compete agreements renders forum selection clauses in those agreements unreasonable. *Britvan v. Cantor Fitzgerald, L.P.*, No. 216CV04075ODWJPRX, 2016 WL 3896821, at *3 (C.D. Cal. July 18, 2016); *Rowen v. Soundview Commc'ns, Inc.*, No. 14-CV-05530-WHO, 2015 WL 899294, at *5 (N.D. Cal. Mar. 2, 2015); *Meyer*, 2015 WL 728631, at *11–12. Because Plaintiffs have not put forth evidence to show that the forum selection clause in Jergan's contract is unreasonable under any of the three tests, the Court finds the forum selection clause valid under federal law.

### 3. The Public Interest Factors

Once a forum selection clause is found valid under federal law, the clause "should be given controlling weight in all but the most exceptional cases" because doing so serves the interest of justice by "holding the parties to their bargain." *Atl. Marine*, 134 S. Ct. at 582. Nevertheless, in the rare instance that the public interest factors "overwhelmingly disfavor" enforcement of the clause, a court may set the clause aside. *Id.* at 583. In determining whether a forum clause should be set aside, courts consider: (1) the local interest in having localized controversies decided at

home; (2) the court's familiarity with the governing law; and (3) administrative difficulties flowing from court congestion. *Id.* at 581, n.6. Plaintiffs bear the burden of demonstrating that the public interest factors overcome the private interest factors, which weigh entirely against them. *Id.* at 581–82.

### a. *Localized Interests*

In evaluating this factor, courts have compared the interests of the forum clause state with the interests of the state where the litigation is currently pending. *See Glob. Quality Foods*, 2016 WL 4259126, at *9. Defendant argues that Michigan has a localized interest in adjudicating this case because Defendant is headquartered there, Jergan worked for Defendant in Michigan, and because this case involves the protection of Michigan companies from out-of-state competition. (Def. Br. 3, ECF No. 27.) Plaintiffs argue that California has a localized interest in adjudicating this case because it has a strong public policy against non-compete clauses, Mechanix is headquartered here, and Jergan works (until recently when the preliminary injunction went into effect) and resides here. (Pls. Br. 2–3, ECF No. 26.) Both sides present legitimate localized interests. Therefore, the Court finds that this factor does not favor either party.

### b. *Familiarity with Governing Law*

In evaluating this factor, courts have considered which of the venues is more familiar with the governing law. *Glob. Quality Foods*, 2016 WL 4259126, at *9. Here, the agreement between Jergan and Defendant specifies that Michigan law shall apply to all related claims. *Id.* (taking into account a choice of law provision in its analysis of the familiarity with governing law factor). Although Michigan courts apply Michigan law on a daily basis, district courts are equally capable of applying Michigan law. *Rowen*, 2015 WL 899294, at *7 ("federal judges routinely apply the law of a State other than the State in which they sit.") (quoting *Atl. Marine*, 134 S. Ct. at 584.) Therefore, the Court also finds that this factor does not favor either party.

### c. *Administrative Difficulties*

Defendant argues that Michigan's courts are less congested than this Court. (Def. Br 5.) However, Defendant analyzes only the congestion of federal courts in Michigan, not Kent County Circuit Court where this action would likely end up. (*Id.*) For their part, Plaintiffs argue that maintaining venue in California would save money. (Pls. Br. 6.) However, Plaintiffs offer only a single conclusory statement in support of this contention. (*Id.*) The Court therefore finds that the administrative difficulties factor does not favor either party.

In sum, the Court finds that the public-interest factors do not "overwhelmingly disfavor" enforcing the forum-selection clause. *See Atl. Marine*, 134 S. Ct. at 583. This is not the rare and "most exceptional" case in which the Court should set aside such a clause. *Id.* at 579, 582; *O'keeffe's Inc.*, 2015 WL 6089418, at *3 (finding that the plaintiff's "interests in having the dispute decided in California" did not render case "exceptional" so as to defeat "application of a valid forum-selection clause."). Therefore, the Court **GRANTS** Defendant's motion to dismiss for forum non conveniens.[10]

### 4. Whether to Hold Mechanix to the Forum Selection Clause in Jergan's Contract

Plaintiffs argue that Mechanix should not be bound by the forum selection clause in Jergan's non-compete agreement because it was not a signatory to the agreement. (Pls. Opp'n 14–17.) However, as Defendant points out, the Ninth Circuit has found that closely related parties may be bound by a forum selection clause even though they were not signatories to the contract containing the clause. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses."). Employers in Mechanix's position are sufficiently related to be bound by such clauses. *See Meyer*, 2015 WL 728631, at *13 (binding

---

[10] The Court will not invalidate Defendant's motion for failure to adequately meet and confer. (*See* Pls. Opp'n 7–9.) While Defendant may not have fully complied with Local Rule 7-3, Plaintiffs have not shown that they were meaningfully prejudiced by Defendant's conduct.

1  employee's new employer to the forum selection clause in non-compete agreement
2  employee entered into with previous employer).  Therefore, the Court will also hold
3  Mechanix to the forum selection clause in Jergan's contract.

4  **5. Whether to Hold Plaintiffs Liable for Defendant's Attorneys' Fees**

5  Plaintiff also moves for attorneys' fees on the basis of the non-compete
6  agreement.  The non-compete agreement includes the following clause:

> In the event I cause to be filed a lawsuit pertaining to this
> Agreement in any court other than the Kent County Circuit
> Court, necessitating the Company's [PFI's] filing of a
> motion for a change in venue, I agree to be held liable for
> all costs and attorneys' fees incurred by the Company
> [PFI] in seeking to change venue.

(Non-compete Agreement 39.)  Defendant argues that it is now entitled to attorneys' fees in connection with its motion.  (Mot. to Dismiss 15.)  Plaintiffs argue that the agreement specifies Defendant may only recover expenses for a motion to transfer venue—not a motion to dismiss.  (Pls. Opp'n 25.)  The Court sides with Plaintiffs.

"Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.  Whenever possible, the plain language of the contract should be considered first." *Doe 1,* 552 F.3d at 1081.  Here, the plain language of the agreement indicates that Jergan is contractually liable for "costs and attorneys' fees" Defendant incurs "seeking to *change* venue." (Non-compete Agreement 39 (emphasis added).)  Defendant filed a Rule 12(b)(3) motion to dismiss and now has been granted dismissal on the basis of forum non conveniens; there was never any motion before the Court for transfer or a

"change" of venue. Therefore, based on the plain language of the agreement, the Court finds Defendant is not contractually entitled to costs or attorneys' fees.[11]

V.    CONCLUSION

Based on the above discussion, the Court **DENIES** Plaintiffs' motion to remand (ECF No. 19) and **GRANTS** Defendant's motion to dismiss for forum non conveniens. (ECF Nos. 15, 22.) The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

January 31, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[11] Defendant may still submit a bill of costs as the prevailing party.